COURT OF CHANCERY
OF THE
STATE OF DELAWARE

SELENA E. MOLINA
MASTER IN CHANCERY

LEONARD L. WILLIAMS JUSTICE CENTER
500 NORTH KING STREET, SUITE 11400
WILMINGTON, DE 19801-3734

Final Report: August 11, 2022
Date Submitted: May 13, 2022

Carla Cowan
2 Curlew Circle
Newark, DE 19702

Kathleen DeLacy, Esquire
Reger Rizzo & Darnall LLP
1521 Concord Pike, Suite 305
Wilmington, DE 19803

Re:  *Cowan v. Furlow*,
C.A. No. 2018-0915-SEM
*IMO Real Estate of Alvin David Smith, Jr., deceased*,
C.A. No. 2019-1038-SEM

Dear Ms. Cowan and Counsel:

I write to address all pending requests in the above-captioned matters and explain how each matter should proceed to final resolution. In short, Civil Action No. 2019-1038-SEM should be closed, and Civil Action No. 2018-0915-SEM tried. To bring about those conclusions, I address herein the frivolous motion for recusal and other ancillary matters. This is my final report.

## I.     BACKGROUND

This action stems from the administration of the estate of the late Alvin David Smith (the "Decedent") who passed on November 5, 2017.[1] Carla Cowan (the

---

[1] Second Action Docket Item ("D.I.") 1.

"Petitioner"), the niece of the Decedent, initiated the first action on December 19, 2018, seeking the removal of James Furlow (the "Respondent") as the personal representative of the Decedent's estate, an accounting, and other related relief (the "First Action").[2] While the First Action was pending, the Respondent filed a new civil action (the "Second Action") seeking to sell real property owned by the Decedent to pay debts of the Decedent's estate.[3]

I will not attempt to summarize the extensive docket activity in the First Action and Second Action. In pertinent part, the Second Action is complete. I granted the petition to sell, the Respondent filed the required return of sale on May 4, 2021, and Vice Chancellor Slights overruled the Petitioner's exceptions, confirming the sale on December 3, 2021.[4] On February 10, 2022, I directed counsel to submit proof that the sale proceeds were deposited into the estate such that the Second Action could be closed.[5] The Respondent instead provided an update on the status of the underlying estate, which is a separate matter under the jurisdiction of the Register of Wills.[6]

---

[2] First Action D.I. 1.
[3] Second Action D.I. 1.
[4] *See* Second Action D.I. 61, 71, 93.
[5] Second Action D.I. 94.
[6] Second Action D.I. 95. Disputes are also pending on the Register of Wills docket. *See In re Alvin David Smith, Jr.*, 168416 FC ("ROW") D.I. 45.

Regarding the First Action, the Petitioner continues to file ancillary motions, delaying the time to final resolution. After Vice Chancellor Slights overruled her exceptions on December 3, 2021, the Petitioner filed (1) a letter seeking to remove two interested parties from receiving notice of the First Action (the "Letter Request") and (2) a motion to recuse me and counsel to the Respondent, and for the removal of the Respondent as personal representative of the Decedent's estate (the "Motion").[7] The Register of Wills responded to the Letter Request, noting it "does not intend to take any action regarding Petitioner's letter unless instructed otherwise by the Court."[8] The Respondent filed a response in opposition to the Motion on May 2, 2022 and asks, in turn, that fees be shifted in his favor.[9] With the additional filings by the Petitioner on May 13, 2022, I find the Motion is fully briefed and ripe for my consideration.[10]

---

[7] First Action D.I. 167-169, 171-173. This is the second time the Petitioner has moved for my recusal; her first motion was filed on June 15, 2020, and denied on August 22, 2020. First Action D.I. 60, 65. *See also* First Action D.I. 71. The Motion also includes various objections to filings with the Register of Wills. *See* First Action D.I. 171, p.1 (contesting "the Second and Final accounting [of] the Administration"). These challenges are outside the scope of the First Action and Second Action and should be (and it appears have been) brought in the Register of Wills proceeding. *See* ROW D.I. 45, 47, 49. I do not address the merits of the Register of Wills challenges in this report.

[8] First Action D.I. 170.

[9] First Action D.I. 175. The Respondent also filed a letter attaching a letter from Nisan Salelite, claiming to be a beneficiary of the underlying estate. First Action D.I. 174. I received the same letter. Second Action D.I. 109. I will not act on the letter without a motion or petition from the allegedly interested party. *See* Ct. Ch. R. 7(b)(1).

[10] Second Action D.I. 110.

## II.   ANALYSIS

Litigation of these two related matters has been difficult, to say the least.  This report addresses the pending requests and how each matter should move forward.

### A. The Second Action should be closed.

The parties appear to misunderstand the scope of the Second Action.  The Second Action sought to sell property to pay debts of the Decedent's estate.  It was a limited request and, as such, a limited action.  The Second Action is not the appropriate forum to continue to dispute the debts of the estate or how the net sale proceeds are ultimately expended—any such disputes can and should be filed on the Register of Wills docket.[11]  Because the property has been sold, the sale proceeds are either in counsel's escrow or an estate account, and I find the return of sale should be approved, the Second Action should be marked closed.[12]

---

[11] *See* Ct. Ch. R. 197.

[12] The Petitioner filed a document on April 7, 2022, continuing to contest the sale of the property. *See* Second Action D.I. 96.  The document reads like an appeal—with the Petitioner referring to herself as the appellant and stating alleged errors by this Court.  But the Petitioner has not noticed an appeal.  To the extent the filing was meant as a motion under Court of Chancery Rule 60, which is referenced by the Petitioner, it fails on its merits. Vice Chancellor Slights' ruling stands and there are no remaining issues in the Second Action. *See* Second Action D.I. 93.  And to the extent it seeks the same relief as the Motion, it should be denied for the same reasons provided herein.

### B. The First Action should be tried.

Unlike the Second Action, the First Action is still in its infancy. Although it has been pending longer, the First Action continues to be mired by ancillary requests. Herein, I dispose of the Letter Request and the Motion, set a trial date, and direct the parties to work together on a schedule, using the sample schedule available on the Court's website, to prepare for trial.

### 1.    The Letter Request should be denied.

Through the Letter Request, the Petitioner seeks to remove two parties previously identified as interested parties in the First Action (Lisa Edwards and Clyde Lee III).[13] The Petitioner argues these parties are the children of a living heir, Gwendolyn Pollard, and, as such, are not entitled to any intestate distribution from the Decedent's estate. Because they are not heirs, the Petitioner reasons these individuals have no interest in the First Action and should not be included as interested parties.

Although I appreciate the logic of the Letter Request, it suffers from several defects. First, any request for relief must be made by motion, not letter, under Court of Chancery Rule 7(b). Second, the Letter Request was not served on the parties

---

[13] First Action D.I. 167-169.

whom the Petitioner seeks to remove; those parties have the right to be heard on the request, should they wish to be. And, finally, the Letter Request appears to be directed not just at the First Action but also the Register of Wills. Any request or challenge relating to the parties entitled to notice in the Register of Wills proceeding must be filed in that action.

For these reasons, the Letter Request should be denied without prejudice. If the Petitioner wishes to have the named parties removed as interested parties in the First Action, she may resubmit her request as a motion and provide notice to the interested parties.

## 2. The Motion should be denied, and fees shifted.

Also pending before me is the Motion. The Petitioner seeks my recusal and that of counsel to the Respondent. I start with the former, which is the Petitioner's second request for my recusal. It includes the same unfounded allegations of misconduct in her first motion, which I denied, and her exceptions, which Vice Chancellor Slights overruled.[14] The Motion is frivolous and should, again, be denied.[15]

---

[14] *See* First Action D.I. 65, 166.

[15] In response to the Petitioner's first motion for my recusal, I conducted a thorough review of the applicable standards, which was confirmed and adopted as an order of this Court by then-Chancellor Bouchard. *See* First Action D.I. 65, 71. Although I find a lengthy discussion of this renewed request is unnecessary, I reiterate: I hold no ill-will toward the Petitioner nor any

The Petitioner's request to recuse the Respondent's counsel is equally frivolous. The Petitioner, essentially, argues that the Respondent's counsel has been an active participant in the Respondent's allegedly fraudulent activities. Thus, she asks that counsel be recused and held liable. As recognized by Vice Chancellor Slights, any "suggestion that the [Respondent], his counsel (and the Master) engaged in criminal misconduct by presenting (and accepting) false information related to the [p]etition is frivolous."[16] The Petitioner cannot restate her arguments as a motion to recuse and expect any other outcome—they remain frivolous and should be dismissed.

Vice Chancellor Slights warned the Petitioner about future frivolous filings, writing the Petitioner "is on notice that continued unfounded allegations of misconduct, including judicial misconduct, or frivolous and wasteful litigation

---

favoritism toward the Respondent or his counsel, I do not have a personal connection to either side, and I can continue to preside over this matter impartially without any bias or prejudice. Vice Chancellor Slights also reviewed this case *de novo* and found any "suggestion that the [Respondent], his counsel (and the Master) engaged in criminal misconduct by presenting (and accepting) false information related to the [p]etition is frivolous." First Action D.I. 166 ¶ 7.

Although frivolous on its face, I pause to also address the Petitioner's primary argument that I have failed to consider her "evidence." This argument is misplaced—no evidence has been submitted to the Court; the Petitioner has not moved for summary judgment and has represented that she is not ready for trial. Once evidence is submitted at the trial scheduled herein, I will give it the weight and credibility I find it deserves and issue my final recommendation(s) as promptly as possible.

[16] First Action D.I. 166 ¶ 7.

tactics, will likely subject her to sanctions including, but not limited to, fee shifting."[17]  Her failure to heed his warning should have consequences.

Although litigants in this Court are typically expected to bear their own costs and legal expenses, bad faith litigation conduct can support fee shifting.[18]  This bad faith exception protects against one party "unjustifiably increasing the costs of litigation."[19]  "[F]ee shifting is an equitable device"[20] and a party cannot hide behind their status as a self-represented litigant, or someone approved to proceed *in forma pauperis* (without the payment of court fees).[21]

---

[17] *Id.* at ¶ 9.

[18] *See Beck v. Atl. Coast PLC*, 868 A.2d 840, 850-51 (Del. Ch. 2005) (explaining the American Rule that "litigants are expected to bear their own costs of litigation absent some special circumstances that warrant a shifting of attorneys' fees" and the bad faith exception thereto).

[19] *Id.* at 851.

[20] *In re First Interstate Bancorp Consol. S'holder Litig.*, 756 A.2d 353, 362 (Del. Ch. 1999), *aff'd sub nom. First Interstate Bancorp v. Williamson*, 755 A.2d 388 (Del. 2000).

[21] *See, e.g.*, *Hardy v. Hardy*, 2014 WL 3736331, at *18 (Del. Ch. July 29, 2014) (finding *pro se* defendants liable for the plaintiff's attorneys' fees due to the defendants' bad faith conduct throughout the litigation.).

I granted the Petitioner's request to proceed *in forma pauperis* on April 21, 2021.  *See* First Action D.I. 136.  *See also* Ct. Ch. R. 83.  "[B]ecause *in forma pauperis* litigants do not face the same 'economic disincentives to filing meritless cases that face other civil litigants,' 10 *Del. C.* § 8803(b) provides a mechanism to dismiss frivolous or malicious actions."  *Wood v. Collison*, 2014 WL 7149214, at *5 (Del. Super. Dec. 12, 2014).  The Petitioner is warned that future attempts to relitigate issues already resolved in this action may lead to a recommendation that her claims be dismissed under 10 *Del. C.* § 8803(c) or the Petitioner be deemed a litigant who has abused the judicial process and should be enjoined from filing future claims without leave of court under 10 *Del. C.* § 8803(e). *See also In re Sindram*, 498 U.S. 177, 179–80 (1991) (explaining, in the analogous federal context, "the Court waives filing fees and costs for indigent individuals in order to promote the interests of justice. The goal of fairly dispensing justice, however, is compromised when the Court is forced to devote its limited resources to the processing of repetitious and frivolous requests. *Pro se* petitioners have a greater capacity than most to disrupt the fair allocation of judicial resources because they are not subject to the financial considerations—filing fees and

Given the frivolous and wasteful nature of the Motion, I find the Petitioner should be required to pay the Respondent's reasonable fees incurred in responding to the Motion.[22]  The Respondent shall file an affidavit under Court of Chancery Rule 88 within thirty (30) days.  The Petitioner may respond to the affidavit within thirty (30) days of its filing.  A separate order will then be issued on the amount of fees to be shifted.

### 3.     The First Action will be tried without delay.

The Petitioner commenced the First Action on December 19, 2018.  There is no reason to further delay final resolution. Trial is hereby set for February 13, 2023. The parties shall meet and confer and submit a proposed schedule, or competing schedules, using this Court's form scheduling order, within thirty (30) days.

## III.   CONCLUSION

For the above reasons, I find the Second Action should be closed and the First Action tried.  To prepare the First Action for trial, I find the Letter Request should

---

attorney's fees—that deter other litigants from filing frivolous petitions. . . . In order to prevent frivolous petitions for extraordinary relief from unsettling the fair administration of justice, the Court has a duty to deny *in forma pauperis* status to those individuals who have abused the system.") (citations omitted).

[22] Although I recognize that the Petitioner was approved to proceed *in forma pauperis* based on the level of her assets and income, I note the Petitioner stands to inherit from the Decedent's estate. *See* ROW D.I. 41 (reflecting remaining assets of $18,944.43 in the estate).  *Cf. Cardone v. State Dept. of Corr.*, 2008 WL 2447440, at *11 n.116 (Del. Ch. June 4, 2008) (addressing a request to shift fees to a party proceeding *in forma pauperis* but denying same because the moving party failed to identify "the conduct necessary for fee shifting" under the bad faith exception).

be denied without prejudice to renew as appropriate and the Motion should be denied and fees shifted to the Petitioner. The Respondent shall submit an affidavit under Court of Chancery Rule 88 within thirty (30) days, to which the Petitioner may respond within thirty (30) days after filing. The parties are further directed to file a proposed scheduling order within thirty (30) days building up to the February 13, 2023 trial.

This is my final report and exceptions are stayed under Court of Chancery Rule 144 until a final order is issued on the amount of fees to be shifted.

Respectfully submitted,

*/s/ Selena E. Molina*

Master in Chancery

cc:     All Parties of Record
         (Via File & ServeXpress)